UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
BEDFORD JV, LLC,                                          :
                                                          :     **MEMORANDUM & ORDER**
                              Appellant,                  :
                                                          :     12-CV-5850 (DLI)
                    -against-                             :
                                                          :
SKY LOFTS, LLC,                                           :
                                                          :
                              Appellee.                   :
----------------------------------------------------------x
                                                          :
BEDFORD JV LLC,                                           :
                                                          :
                              Appellant,                  :
                                                          :     12-CV-5851 (DLI)
                    -against-                             :
                                                          :
S & Y ENTERPRISES, LLC,                                   :
                                                          :
                              Appellee.                   :
----------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Bedford JV, LLC ("Bedford JV") appeals from the September 28, 2012 order and accompanying memorandum decision of the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York, which denied Bedford JV's application, pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4), for allowance of an administrative expense claim in the chapter 11 bankruptcy cases of S & Y Enterprises, LLC ("S & Y") and Sky Lofts, LLC ("Sky Lofts," and together with S & Y, the "Debtors"). The Debtors, CAB Bedford LLC ("CAB Bedford"), and the United States Trustee oppose. (Docket Entry Nos. 9, 11.) For the reasons set forth below, the bankruptcy court's order is affirmed.

## BACKGROUND

**A. Original Sale Agreement with CAB Bedford and Chapter 11 Petitions**

On July 12, 2010, the Debtors entered into an agreement to sell real property to CAB Bedford for $20 million. (JA11.[1]) As part of the transaction, the parties agreed that Sky Lofts would receive a 25 percent interest in CAB Bedford. (JA54 ¶ 6.) The parties intended to develop the property with upscale retail establishments. (*Id.*)

A few months later, on November 8, 2010, Capital One, N.A. ("Capital One") sent S & Y a notice of a default under a note and mortgage and demanded payment of the total balance due. (JA5 at 4-5.) Shortly thereafter, on November 11, 2010, S & Y filed a voluntary Chapter 11 bankruptcy petition. (JA1.) On November 22, 2010, due to increased construction costs and difficulties in obtaining zoning waivers, the Debtors and CAB Bedford entered into an amended sale agreement to reduce the purchase price from $20 million to $16.5 million. (JA28 ¶ 10; JA54 ¶¶ 8-9.) On December 8, 2010, Sky Lofts also filed a voluntary Chapter 11 bankruptcy petition. (JA3.)

On February 24, 2011, the Debtors filed disclosure statements and plans of reorganization, which contemplated approval of the sale of the properties to CAB Bedford for $16.5 million pursuant to the parties' amended sale agreement. (JA5; JA6; JA54 ¶ 11.) On March 7, 2011, the Debtors filed first amended plans of reorganization. (JA14; JA16.) The Debtors' secured lenders, Capital One and Banco Popular North America ("Banco Popular"), and an unsecured creditor, North Third Development, LLC, objected to confirmation of the first amended plans, arguing, *inter alia*, that the disclosure statements failed to provide a clear basis to

---

[1] "JA" citations correspond to exhibits in the joint appendix of items designated for the record on appeal.

conclude that the Debtors could pay their creditors in full. (JA17; JA18; JA19; JA20; JA21.) A confirmation hearing was postponed from April 28, 2011 to May 26, 2011. (JA21.)

**B.     Bedford JV Sale Agreement**

On May 8, 2011, the Debtors entered into a new sale agreement to sell their properties to Bedford JV for $21 million. (JA23.) As part of the sale, the Debtor's equity owners, Yehuda and Ruthe Backer (collectively, the "Backers"), were to receive a 35 percent interest in Bedford JV.[2] (JA54 ¶¶ 15-16.)

Later that week, on May 11, 2011, the Debtors filed second amended plans of reorganization, which incorporated the new proposed transaction with Bedford JV. (JA24.) Bedford JV had responsibility for negotiating and formulating the second amended plans. (JA89 ¶¶ 9, 11.) On May 23, 2011, Banco Popular and CAB Bedford filed objections to the second amended plans. (JA25; JA26; JA27; JA28.) Specifically, CAB Bedford objected on the basis that the Debtors did not inform CAB Bedford about the sale agreement with Bedford JV, and further, CAB Bedford contended that it had a rejection damage claim of no less than $5.5 million as a result of the Debtors' proposed transaction with Bedford JV. (JA27 at 3.)

At a status hearing on May 26, 2011, the bankruptcy court adjourned the confirmation hearing, and the Debtors, CAB Bedford, and Bedford JV agreed to conduct discovery and depositions concerning the issues raised in CAB Bedford's objections to the second amended plan. (JA34; JA54 ¶¶ 18-22.) Thereafter, Bedford JV participated in the required discovery, which included document production and depositions, and it also drafted and filed a motion to

---

[2] The governing sale agreement also required the Debtors to terminate negotiations with other parties and refrain from soliciting offers from others to purchase the Property. (JA28 ¶ 9(b)(v) and 9(b)(xii).)

3

reject the CAB Bedford sale agreement and fix CAB Bedford's rejection damage claim at $100,000. (JA35; JA36; JA89 ¶ 11.)

**C.     Third Amended Plan and Confirmation of Sale to CAB Bedford**

On January 27, 2012, the Debtors filed third amended plans of reorganization, this time seeking approval of the sale of the properties to CAB Bedford for $21 million. (JA49 at 10; JA53.) The third amended plans also provided that: (1) Sky Lofts would become a 35 percent member of CAB Bedford at closing; (2) CAB Bedford's rejection damage claim would be fixed at $12 million; and (3) CAB Bedford would agree to waive its rejection damage claim. (JA54 ¶¶ 30-32; JA58.)

On February 24, 2012, Bedford JV objected to confirmation of the Debtors' third amended plans, arguing, *inter alia*, that the plans failed to provide sufficient funding for additional claims and administrative expenses, violated the absolute priority rule under 11 U.S.C. § 1129(b), and included misleading information by suggesting that CAB Bedford had a rejection damage claim of $12 million. (JA59; JA60.) No other objections were filed. However, the United States Trustee, and the Debtors' secured creditors, Capital One and Banco Popular, supported confirmation of the third amended plans. (JA83 at 63:3-13, 63:17-19, 69:12-20; JA70.)

On March 9, 2012, the bankruptcy court approved the third amended plans. (JA78; JA79; JA81.)

**D.     Bedford JV's Substantial Contribution Application**

On February 24, 2012, Bedford JV filed its application for allowance of an administrative expense claim, pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4), seeking allowance and reimbursement of $1,378,949.25. (JA61.) Specifically, Bedford JV claimed that it substantially

4

contributed to the bankruptcy cases by "work[ing] diligently and efficiently in its efforts (i) to document the Bedford JV Sale Agreement; (ii) to draft a plan of reorganization and disclosure statement based on the Bedford JV Sale Agreement; and (iii) toward confirming the Bedford JV Plan, including participating in discovery and addressing the alleged CAB Bedford rejection claim." (*Id.* ¶ 2.) In addition to the legal fees incurred by its own counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, Bedford JV also sought reimbursement of legal fees and expenses it paid to Curtis, Mallet-Prevost, Colt & Mosle LLP, counsel to Yehuda and Ruthe Backer, for services rendered to the Backers (*Id.* ¶ 55.) The Debtors, the Backers, CAB Bedford, and the United States Trustee objected to the application. (JA84; JA85; JA86; JA90; JA91; JA92.) On June 13, 2012, the bankruptcy court held a hearing on the application, at which Bedford JV, the Debtors, CAB Bedford, and the United States Trustee appeared by counsel. (JA94.)

On September 28, 2012, the bankruptcy court issued an order and accompanying memorandum decision denying Bedford JV's application. (JA95; JA96.) In its memorandum decision, the bankruptcy court held that Bedford JV had standing under Sections 503(b)(3)(D) and 503(b)(4) to recover the counsel fees and expenses that it incurred and paid on behalf of the Backers but nonetheless found that Bedford JV had not established, by a preponderance of the evidence, that it was entitled to a substantial contribution administrative expense. *See generally In re S & Y Enters.*, 480 B.R. 452 (Bankr. E.D.N.Y. 2012).

# DISCUSSION

**A.     Legal Standard**

    i.     <u>Standard of Review</u>

A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*. *Overbaugh v. Household Bank N.A.* (*In re Overbaugh*), 559 F.3d 125, 129 (2d Cir. 2009); Fed. R. Bankr. P. 8013.  A bankruptcy court abuses its discretion where "its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Schwartz v. Geltzer* (*In re Smith*), 507 F.3d 64, 73 (2d Cir. 2007) (quoting *Schwartz v. Aquatic Dev. Grp., Inc.* (*In re Aquatic Dev. Grp., Inc.*), 352 F.3d 671, 678 (2d Cir. 2003) (internal quotation marks and brackets omitted)).

Whether a party has made a "substantial contribution" under Section 503 is considered a question of fact, and a bankruptcy court's determinations concerning requests for administrative expenses are reviewable for abuse of discretion. *In re United Merchs. and Mfrs., Inc.*, 1999 WL 972653, at *2-3 (2d Cir. Sept. 22, 1999) (reviewing administrative expense award under Section 503(b)(3)(D) for abuse of discretion (citing *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 943 (2d Cir. 1979)); *Trade Creditor Grp. v. L.J. Hooker Corp.* (*In re Hooker Invs., Inc.*), 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 349 (2d Cir. 1996) (reviewing partial denial of administrative expense application "using an abuse of discretion standard, . . . considering in the process whether [the bankruptcy judge's] findings of fact [were] clearly erroneous and her application of legal standards appropriate"); *In re Nine Assocs., Inc.*, 76 B.R. 943, 944 (S.D.N.Y. 1987) ("[T]he standard of review on an appeal of a fee award from a bankruptcy court to a

district court is that the decision will be affirmed unless the bankruptcy judge has abused his discretion" (citation omitted)); *see also In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012) ("Whether a creditor has made a substantial contribution within the meaning of § 503(b)(3)(D) is a question of fact, 'and it is the bankruptcy court that is in the best position to perform the necessary fact finding task.'" (quoting *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 946 (3d Cir. 1994)).

    ii.    <u>Substantial Contribution under Section 503</u>

Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code permits certain parties to request payment for "actual, necessary expenses" in making a "substantial contribution" in a Chapter 11 case. The relevant statutory language provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by— . . . (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(3)-(4).

Although the Second Circuit has not squarely addressed the issue,[3] district courts and bankruptcy courts in this circuit have considered the following factors in determining whether

---

[3] *See In re United Merchs. and Mfrs., Inc.*, 1999 WL 972653, at *3 ("We have not yet had occasion to articulate the contours of what is a 'substantial contribution' sufficient to render

7

"substantial contribution" has been made under Section 503: (1) whether the services benefited the estate itself or all of the parties in the bankruptcy case; (2) whether the service resulted in a direct, significant, and demonstrably positive benefit for the estate; and (3) whether the services duplicated the efforts by others. *See, e.g.*, *In re Hooker Invs., Inc.*, 188 B.R. at 120; *In re Granite Partners, L.P.*, 213 B.R. 440, 445-46 (Bankr. S.D.N.Y. 1997); *In re Best Prods. Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994). Parties seeking contribution under Section 503 must prove substantial contribution by a preponderance of the evidence. *See, e.g.*, *In re Granite Partners*, 213 B.R. at 447 (collecting cases).

Given that administrative expenses under Section 503 are paid on a priority basis and reduce the funds available for distribution under a debtor's plan for reorganization, "[a] substantial contribution award is made only for 'extraordinary creditor actions,' on 'those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate.'" *In re United Merchs. and Mfrs., Inc.*, 1999 WL 4929, at *2 (S.D.N.Y. 1999) (quoting *In re Best Prods. Co.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994)); *see also In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 726 (Bankr. E.D.N.Y. 1996) (collecting cases and noting that, "[w]hile the policy aim behind section 503 is to promote meaningful creditor participation in the reorganization case, it is well settled that this provision should be narrowly construed").

**B.**     **Analysis**

　　i.    <u>Legal Error</u>

Bedford JV contends that the bankruptcy court committed legal error in two respects. First, Bedford JV contends that the bankruptcy court erred by "construing Section 503(b) to include an 'intent' element in which [Bedford JV's] motivation[] for taking actions . . . was

---

parties eligible for compensation under 11 U.S.C. § 503(b)(3)(D), but we have no need to do so today.")

considered a major factor" in whether to grant Bedford JV's application. (Opening Br. of Appellant ("Opening Br.") at 18-23, Docket Entry No. 7.) This argument is meritless because Bedford JV largely glosses over, or ignores entirely, significant portions of the memorandum decision, including the portion in which the bankruptcy court recognized that "a measure of self-interest seems likely in nearly every situation," such that "the existence of a self-interest cannot in and of itself preclude reimbursement." *In re S & Y Enters.*, 480 B.R. at 463 (citation omitted). Indeed, one portion of Bedford JV's brief suggests that the bankruptcy court acted contrary to a prior decision from this district, *In re Amfesco Industries, Inc.*, 1988 WL 141524 (E.D.N.Y. Dec. 21, 1988), despite the fact that the bankruptcy court specifically cited that decision for the proposition that "[a]n applicant for a substantial contribution administrative expense 'need not possess an altruistic motive in taking over the debtor *nor an intention that his or her actions will benefit [the] debtor's estate*.'" *In re S & Y Enters.*, 480 B.R. at 463 (quoting *In re Amfesco Indus., Inc.*, 1988 WL 141524, at *4 (emphasis added)).

While there appear to be differing approaches among the circuits concerning the precise weight to be accorded to a party's self-interested motives under Section 503, *see Cellular 101, Inc. v. Channel Commc'ns, Inc.* (*In re Cellular 101, Inc.*), 377 F.3d 1092, 1097 (9th Cir. 2004) (collecting cases),[4] the bankruptcy court's comprehensive discussion of relevant authority makes clear that it did not give undue weight to this factor. Instead, the memorandum decision, read as

---

[4] *Compare Speights & Runyan v. Celotex Corp.* (*In re Celotex Corp.*), 227 F.3d 1336, 1339 (11th Cir. 2000) ("Accordingly, we adopt the Fifth Circuit's holding 'that a creditor's motive in taking actions that benefit the estate has little relevance in the determination whether the creditor has . . . ma[de] a substantial contribution to a case.'" (quoting *Hall Fin. Group, Inc. v. DP Partners, Ltd. P'ship* (*In re DP Partners Ltd. P'ship*), 106 F.3d 667, 673 (5th Cir. 1997)) *with Haskins v. United States* (*In re Lister*), 846 F.2d 55, 57 (10th Cir. 1988) ("Efforts undertaken by a creditor solely to further his own self-interest . . . will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate.").

a whole, demonstrates that the bankruptcy court did not deny Bedford JV's application because Bedford JV acted in its own self-interest, but rather because Bedford JV's self-interested actions provided no *direct* benefit to the bankruptcy cases. *See In re S & Y Enters.*, 480 B.R. at 465 ("At most, Bedford JV has shown that its activities led to an indirect benefit to these bankruptcy cases, and plainly, that is not enough."); *id.* at 467 ("Bedford JV has not shown by a preponderance of the evidence that the Backers played a role in the bankruptcy process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole.").

As its second argument, Bedford JV, an outside prospective investor with no claim or equity interest in the Debtors, contends that the bankruptcy court erred because it purportedly "imput[ed] a heightened level of scrutiny to [Bedford JV's] application because [Bedford JV] is not one of Section 503(b)(3)(D)'s illustrative examples of the possible types of substantial contribution applicants."[5] (Opening Br. at 23-25.) In advancing this argument, Bedford JV highlights the bankruptcy court's statements in its memorandum decision that: (1) "[t]he [substantial contribution] standard may be even higher for entities that are not specifically listed in Section 503(b)(3)(D)," and (2) "as an entity that is not among those specifically listed in Section 503(b)(3)(D), Bedford JV must make a substantial showing in order to shift its counsel fees and costs to the Debtors' estates in the form of an allowed administrative expense." *In re S & Y Enters.*, 480 B.R. at 461, 465.

This argument, too, is meritless. The bankruptcy court did not impose a heightened evidentiary standard by these statements; it simply acknowledged that, relative to the entities specifically listed in Section 503(b)(3)(D), prospective acquirers, like Bedford JV, are generally

---

[5] As noted *supra*, Section 503(b)(3)(D) provides that "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders" may be eligible to receive a substantial contribution award. 11 U.S.C. § 503(b)(3)(D).

10

less able or willing to undertake special or extraordinary actions that advance the entire bankruptcy process. Indeed, when specifically addressing the evidentiary standard to be applied to Bedford JV's application, the bankruptcy court stated:

> In order to prevail on this application, Bedford JV must demonstrate by a preponderance of the evidence that it provided services in the bankruptcy process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole. . . . Bedford JV must also show that its efforts advanced the entire bankruptcy process, not just the outcome, and moved these bankruptcy cases toward a successful reorganization.

*Id.* at 465-66. This statement, consistent with the standard regularly applied by district and bankruptcy courts in this circuit and appellate courts in other circuits, properly sets forth the applicable standard for administrative expense claims under Section 503.

In sum, the Court finds no legal error in the bankruptcy court's memorandum decision or its application of the legal standards to the facts of this case.

    ii.        <u>Denial of Bedford JV's Application</u>

Bedford JV also contends that the bankruptcy court erred in finding that Bedford JV had not established, by a preponderance of the evidence, that it was entitled to an allowed administrative expense under Section 503. In doing so, Bedford JV characterizes itself as an "active participant and leader" in the bankruptcy cases, and emphasizes it was the "direct and sole cause" of: (1) a $4.5 million increase in purchase price by CAB Bedford; (2) the successful confirmation of the third amended plans; and (3) the 100 percent recovery to creditors. (Opening Br. at 14-18.) Bedford JV also emphasizes that its efforts included, *inter alia*, drafting a sale agreement with the Debtors, drafting and defending the second amended plans, participating in discovery and litigating against CAB Bedford's rejection damage claim, and paying fees and legal expenses on behalf of Yehuda and Ruthe Backer. (*Id.*)

Based on a thorough review of the record on appeal, the Court finds that the bankruptcy court did not base its decision on a clearly erroneous factual finding or otherwise abuse its discretion in denying Bedford JV's application. As a preliminary matter, although Bedford JV claims to be the "direct" and "sole" cause of the third amended plans, Bedford JV did not participate or have direct involvement in the negotiation or preparation of those plans. Rather, Bedford JV was the sole objecting party to those successful plans, which lends further support to the bankruptcy court's conclusion that Bedford JV's actions did not directly benefit the estate or advance the bankruptcy process. *Compare Pierson & Gaylen v. Creel & Atwood* (*In re Consol. Bancshares, Inc.*), 785 F.2d 1249, 1253 (5th Cir. 1986) (affirming denial of fees under Section 503 where applicants had "objected to the 'successful plan' and prolonged the confirmation hearing," but later "claim[ed] victory for the entire estate attributable to their efforts to 'further' the plan") *with In re Cellular 101, Inc.*, 377 F.3d at 1097 (affirming award of fees for applications that had "formulated and presented the only reorganization plan that was put forth to the bankruptcy court").

Additionally, although "[c]orroborating testimony by a disinterested party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution,'" *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989), here, no statements were provided by the Debtors, the Backers, creditors, or any other disinterested party, to substantiate Bedford JV's application. To the contrary, Bedford JV's application was supported primarily by statements and legal arguments made by its own attorneys and the managing member of its corporate affiliate (*see* JA61; JA62; JA63; JA87; JA88; JA89), which further demonstrates that the bankruptcy court did not abuse its discretion. *Cf. In re Celotex Corp.*, 227 F.3d at 1337-40

(concluding that bankruptcy court should have awarded fees under Section 503 where "several parties," including the debtors and several committee representatives, "attested to the efforts of [the applicants] to achieve a successful plan of reorganization").

While Bedford JV may have acted aggressively in certain respects, its involvement in the negotiation of a sale agreement and the second amended plans, conducting discovery, and challenging CAB Bedford's rejection damage claim resemble the sort of actions that any potential acquirer might take to purchase the properties under these circumstances. *See In re ASARCO LLC*, 2010 WL 3812642, at *9 (Bankr. S.D. Tex. 2010) ("Neither unsuccessful bidders in bankruptcy auctions (especially unsuccessful auctions) nor unsuccessful competing plan proponents are eligible to receive a substantial contribution claim merely for putting forth a bid or a competing plan."); *In re Dana Corp.*, 390 B.R. 100, 111 (Bankr. S.D.N.Y. 2008) ("[A]s a prospective bidder, Appaloosa's actions were hardly extraordinary and were taken essentially for its own economic self interest with any incidental benefit to the Debtors' estates from its actions failing, as a matter of law, to rise to the level of a substantial contribution . . . .").

Finally, the bankruptcy court did not err in finding that Bedford JV could not recover legal fees and expenses charged by Curtis, Mallet-Prevost, Colt & Mosle LLP, counsel for Yehuda and Ruthe Backer, particularly in light of Bedford JV's failure to offer sufficient evidence or explanation as to how these services directly benefitted the bankruptcy estate, as opposed to the Backers themselves.

In sum, the bankruptcy court's factual determinations were not clearly erroneous, and the denial of Bedford JV's application was well within the bankruptcy court's discretion.[6]

---

[6] Because affirmance is warranted on this basis, the Court need not address the United States Trustee's alternative argument that Bedford JV lacks standing to seek an administrative expense for substantial contribution.

## **CONCLUSION**

For the reasons set forth above, the bankruptcy court's September 28, 2012 order is affirmed.

SO ORDERED.

Dated: Brooklyn, New York
September 3, 2013

/s/
DORA L. IRIZARRY
United States District Judge